No. 44,827

In the Matter of the Trust Estate of Joe H. Sutcliffe. Joseph G. Lewis and Clark M. Fleming, *Appellees,* v. Dale Dean Sutcliffe, Donald Lloyd Sutcliffe, Ronald Floyd Sutcliffe and Terry Joe Sutcliffe, *Appellees,* and Velma Sutcliffe, *Appellant.*

(433 P. 2d 389)

Opinion filed November 13, 1967.

*William L. Rees,* of Topeka, argued the cause and *Jack A. Quinlan,* of Topeka, was with him on the brief for the appellant.

*Charles Forsyth,* of Erie, argued the cause and was on the brief for appellees Joseph G. Lewis and Clark M. Fleming, Trustees.

*Joe F. Balch,* of Chanute, was on the brief for Dale Dean Sutcliffe, Donald Lloyd Sutcliffe, Ronald Floyd Sutcliffe and Terry Joe Sutcliffe, Appellees.

The opinion of the court was delivered by

Fromme, J.: This appeal requires construction of an express trust

and, more specifically, of provisions relating to final disposition of the trust property. The trust was established for the purpose of carrying out the terms of a property settlement agreement entered into between Joe H. Sutcliffe and Velma E. Sutcliffe, his wife.

The following facts were developed during a trial in the court below. Marital difficulties arose between the parties and a separation occurred. The couple owned considerable property. Some of the real estate was held in joint tenancy. The husband had difficulty carrying on his business because of inability to get his wife to sign deeds and other papers. The wife experienced difficulty in obtaining money for living expenses. The parties by their respective attorneys carried on lengthy negotiations for a property settlement. On January 24, 1963, both parties signed a written agreement. The parties agreed to make full settlement of their property rights. In the agreement Joe was to pay $55,000 to purchase an annuity insurance policy on the life of Velma. She was to receive a monthly income therefrom. Velma was to receive a building site in the city of Chanute. Joe was to pay $18,000 toward construction of a house thereon. Velma was to receive household goods and an automobile. Joe was to have a reasonable time to finance these payments. The balance of the property was to belong to Joe.

Joe experienced difficulty in raising $73,000.

On February 21 and March 29, 1963, two deeds were executed by the parties. The names of grantees were left in blank. The deeds covered all of the property owned by the parties.

On March 29 the following trust agreement was signed and acknowledged by Joe H. Sutcliffe as trustor and by Joseph G. Lewis and Clark M. Fleming as trustees.

"WHEREAS, JOE H. SUTCLIFFE and VELMA E. SUTCLIFFE, husband and wife, have agreed that they can no longer live together in peace and harmony and by reason thereof have agreed to live separate and apart, and did, on the 24th day of January, 1963, duly enter into a property settlement, a copy of which is hereto attached and marked Exhibit A, whereby they adjusted all of the property rights existing between them as husband and wife, and

"WHEREAS, in order to carry out the terms and conditions of said property settlement said husband and wife did, on the 21st day of February, 1963, and on the 29th day of March, 1963, duly make and execute a deed covering all of the real estate owned by the said husband and wife wherein the grantee's name was left blank, and

"WHEREAS, said husband and wife agreed that the grantee to be named in said deeds should be such person, or persons, as might be designated by Kenneth Foust, attorney for Velma E. Sutcliffe, and Clark H. Fleming, attorney

for Joe H. Sutcliffe, who have designated that the grantees to be named in said deeds shall be Joseph G. Lewis and Clark M. Fleming, Trustees, to hold, mortgage, or convey said real estate according to the terms contained in said property settlement and such trust agreement.

"Now, Therefore, this agreement made and entered into this 29th day of March, 1963, by and between Joe H. Sutcliffe, as Trustor, and Joseph G. Lewis and Clark M. Fleming, Trustees, witnesseth:

"That for and in consideration of the premises, the mutual agreements herein contained, and other good and valuable consideration, the receipt of which is hereby acknowledged, the said Trustor and the said Trustees have this day, and do hereby covenant and agree each with the other as follows:

"(1) That the names of Joseph G. Lewis and Clark M. Fleming, as trustees, shall be entered in the deeds, the originals of which are hereto attached and marked Exhibit B and Exhibit C, In Trust, nevertheless, to and for the following use, intent and purposes:

"(a) Said Trustees be, and they are hereby authorized and directed to grant, bargain, sell, mortgage, or convey, to such person, firm, or corporation as may or shall be designated by Joe H. Sutcliffe any or all of the real estate described in the deeds hereto attached, for the purpose of raising the sum of not to exceed $73,000.00.

"(b) That at such time as said Trustees shall have on hand the net sum of $73,000.00, said Trustees be and they are hereby authorized and empowered to expend therefrom the sum of $55,000.00 to and with Equitable of New York, through John Knight, their agent, for the purpose of acquiring an annuity for and in the name of Velma E. Sutcliffe, the same to provide for her an income for life, payable monthly, with a clause providing for a guaranteed return of the principal sum expended, and naming as the beneficiary thereof the estate of Velma E. Sutcliffe.

"(c) That said Trustees be, and they are hereby authorized and directed to place on time deposit, in the name of said Trustees, the sum of $18,000.00, which shall be held by them and which shall, at such time as the said Velma E. Sutcliffe shall have completed a new home on lots owned by her in the City of Chanute, Kansas, be paid to the contractor who shall have constructed said new home upon the completion thereof, or sooner if directed by the said Joe H. Sutcliffe; said sum in any event to be paid to such person, or persons, as shall be designated by Velma E. Sutcliffe, and said sum, at the time of such payment, to be increased by the amount of earnings thereon, if any. Said Velma E. Sutcliffe having heretofore agreed to have the new house completed and to vacate the property at 131 South Grant Avenue, Chanute, Kansas, on or before October 1, 1963.

"(d) That, at such time as the said Trustees have on hands the net sum of $73,000.00 available for the above-described purposes, said Trustees be, and they are hereby authorized and directed, to convey to such person, firm, or corporation as shall be designated by the said Joe H. Sutcliffe, any or all of the real estate described in the said exhibits hereto attached, subject in any case to any encumbrance thereon, whereupon this trust shall terminate and shall thereafter be void and of no further force and effect, and the said Trustees shall thereupon be discharged from their trust and released from any further duties hereunder.

"(e) That in any event, the Trustees above named shall not be personally liable for any obligations incurred by them as Trustees hereunder, and the only liability incumbent upon said Trustees shall be to comply with the terms, conditions and provisions herein contained.

"(f) That said Trustees shall act jointly in all matters hereunder, except that if one of the Trustees shall die, or become otherwise incapacitated, then and in that event the surviving or remaining Trustee be, and said Trustee is hereby authorized to act on any and all matters in connection herewith without the necessity of the joining therein of the other Trustee.

"In Witness Whereof, the said Trustor and Trustees have hereunto set their hands this 29th day of March, 1963."

Below the signatures and acknowledgment appeared the following:

"The above and foregoing Trust Agreement has been examined by me, and the same is hereby accepted and approved this 29th day of March, 1963."

This statement was signed by Velma E. Sutcliffe and attested by her attorney.

The deeds and the trust agreement were accepted by the trustees. Attached to the trust agreement was a list of the descriptions of real property covered by the deeds and a copy of the property settlement agreement signed by Joe and Velma Sutcliffe. On April 23, 1963, the trustee who was attorney for the husband wrote a letter to the attorney for the wife. In this letter he outlined what he believed to be the understanding of the parties and asked that the attorney and the wife approve a copy of the letter and return the same to him if it was satisfactory. The third paragraph of that letter read as follows:

"Referring again to the January Contract, I am finally in a position to fully comply with Item One thereof, the same being the annuity contract; Item Two or the Third Street property has been complied with in that you now have a Deed in your possession to that property; Item Three should or could be met since the household goods and furnishings described therein are presently in the control of Velma Sutcliffe; Item Four can be complied with since Joseph Lewis and I, as Trustees, have in our possession the sum of $18,000.00, which can be applied by Velma toward the construction of a home on the Third Street property; Item Five is presently being complied with, and the vacation date is contained in the Trust Agreement; Item Six has been complied with in that you have, in your possession, the title to the 1962 Cadillac, and it is free and clear of all liens and encumbrance."

The letter was approved by the attorney but was returned without the signature of the wife.

On April 30, 1963, the trustees purchased the life insurance annuity and Velma E. Sutcliffe receives monthly payments under this contract. On December 1, 1964, the trustees made final payment of the $18,000 on the house.

On January 28, 1965, Joe H. Sutcliffe died. His will was admitted to probate in Neosho county, Kansas. Omitting the attestation clause it reads:

"I, JOE H. SUTCLIFFE, being of sound and disposing mind and memory, and not under any restraint, do hereby make and publish this my last will and testament, hereby revoking any and all previous wills by me made:

"FIRST: I give, devise and bequeath unto my sons, DALE DEAN SUTCLIFFE, DONALD LLOYD SUTCLIFFE, RONALD FLOYD SUTCLIFFE and TERRY JOE SUTCLIFFE, my entire estate, in equal shares.

"SECOND: I recommend that my beneficiaries shall convert into cash, as speedily as possible after my death, all assets which have a high rate of depreciation, but leave this to the discretion of my beneficiaries.

"THIRD: I nominate and appoint my sons, DALE DEAN SUTCLIFFE and RONALD FLOYD SUTCLIFFE, as joint executors hereof, and direct that they shall not be required to furnish bond for the execution thereof.

"WITNESS MY HAND, at Chanute, Kansas, this 16th day of July, 1963."

Joe and Velma Sutcliffe had four sons. Two of the sons were appointed and qualified as executors of the will. The widow filed an election to take under the laws of descent and distribution and not under her husband's will. No further action has been taken in the probate court.

The trustees filed a petition for instructions in the district court of Neosho county, Kansas, which gives rise to the present appeal. In the petition the trustees outlined facts necessary to show the trust had been performed except for final disposition of the property. They alleged, except by the terms of the will, Joe H. Sutcliffe made no written designation as to a final transfer of the real estate remaining in the trust. They requested the court notify the parties and direct disposition of the property.

The appellant, Velma E. Sutcliffe, filed an answer admitting the allegations in the petition except she alleged the property held by the trustees belonged in the estate of her husband. She further alleged the probate court had acquired original jurisdiction over all controversies affecting disposition of this property.

Answer was filed by the four sons. They and the trustees are appellees herein. The sons admitted the allegations of the trustees' petition except they requested the trust be continued until the probate court could determine if the property belonged in the estate of the decedent.

After a trial in the district court judgment was entered directing the trustees to convey the property remaining in the trust to the

four sons. The basis for this judgment was set forth in a memorandum decision made a part of the journal entry. It recited:

"The court finds that the establishment and validity of the trust are not in issue and that the sole issue is whether the subsequent execution of a will by Joe Sutcliffe constituted an exercise of the power of appointment incorporated in the Trust Agreement."

In this memorandum decision the court found Joe H. Sutcliffe held a power of appointment (as distinguished from a right or power to designate persons to whom the trustees must convey legal title). The court further found the making of the will was a part of the whole chain of events constituting a settlement with the wife and the husband's dominant purpose in making the will was to exercise the power of appointment reserved in the trust. The court determined title to the property passed under the instruments creating the power of appointment and therefore the property remaining in the trust estate was not part of the estate of Joe H. Sutcliffe. The widow appeals from this judgment.

A distinction is generally made between powers of appointment and powers authorized in a trust. (See 41 Am. Jur., Powers §3; 72 C. J. S., Powers §1.)

Much confusion appears in the case law concerning construction of powers, for they are construed in separate areas of law covering real and personal property, wills, estates and trusts. In each of these various areas the subject is discussed. It is generally agreed the subject of powers has received more technical disquisition regarding construction than any single subject in the law. (See 72 C. J. S., Powers §20.)

Construction of a power is governed by principles of the common law as these principles may have been changed by statute. We find no Kansas statute relating to powers of designation. (See K. S. A. 58-2401, *et seq.*)

In the instant case a trust *inter vivos* was created. The trustees held legal title to the trust property. The trustor (settlor) could not dispose of the trust property by his own separate instrument of transfer. So long as the trustees hold legal title they must transfer the trust property. The interest retained by the trustor was not a power of appointment as generally understood. He reserved a mere right or power to designate the person, firm or corporation to whom the trustees might sell, mortgage or convey. The power of appointment (power to effect a transfer of legal title) was created in the trust instrument.

With this in mind let us consider some of the rules of construction to be applied.

In the construction of trust agreements if their text is plain and unambiguous the intention of the trustor (settlor) will be ascertained from the language used. (*Bayless v. Wheeler-Kelly-Hagny Trust Co.,* 153 Kan. 81, 109 P. 2d 108; *In re Estate of Hauck,* 170 Kan. 116, 223 P. 2d 707.) Where construction is necessary the court must put itself in the situation of the trustor when he made the trust instrument and from consideration of the language used in the entire instrument determine the intention of the trustor. (*Dyal v. Brunt,* 155 Kan. 141, 123 P. 2d 307; *In re Estate of Hauck,* supra.) The cardinal rule is that the intention of the trustor as gathered from the whole instrument must control unless contrary to settled principles of law. (*Calkin v. Wallace,* 160 Kan. 760, 165 P. 2d 224; *In re Estate of Hauck,* supra.)

The situation present when the trust instrument was made is expressed therein. The family was split by discord and a separation of husband and wife had occurred. The general purpose was to carry out the terms of a property settlement agreement. When the money was raised and paid the balance of the property was to belong to the trustor, Joe H. Sutcliffe. It was to be conveyed by the trustees to the person, firm or corporation designated by him. This would include himself. The trust instrument does not turn over possession and management of the real estate to the trustees. Their duties related only to raising $73,000 and completing the terms of the property settlement agreement. When the money was raised the trustees could have completed the final transfer required. The $73,000 was raised a year and nine months before the trustor died. The final transfer could have been completed well within that period of time.

Was it the intention of the trustor on the date of the trust agreement to exercise this right to designate in his will? This court holds that it was not and we will set forth our reasons.

The trust instrument did not specify that the designation was to be made by will. No specific manner of designation was outlined. The record does not indicate how the designation was made to enable the trustees to sell or mortgage property to raise the $73,000 but this was not by will. The rights of designation relating to both the sale of property and to the final disposition of the corpus are identical in wording. The trust was for a living purpose as dis-

tinguished from a testamentary purpose. The will of Joe H. Sutcliffe did not refer to trust property and the four sons were not specifically designated as parties to receive the corpus of the trust. The will merely disposed of the decedent's estate in one general item covering the entire estate.

It is also noted the trust imposed no duties upon the trustees as to management and control of the property beyond December 1, 1964, when final payment was made on the new home, except to require final transfer of legal title. The intention of the trustor at the time of execution of the trust is controlling and not his intention at a later time when he makes a will. If it was his intention to permit naked legal title to remain in the trustees for the purpose of transferring title on his death, the trustees were to be mere agents of the trustor after December 1, 1964. In such case the trust would become passive and would result to the beneficiary.

In Bogert—The Law of Trusts and Trustees §206 it is said:

"Often a trust is active at its beginning but becomes passive at a later date, as where a trust is solely to protect a married woman from a named husband, and the husband dies, the remainder is to be held in trust for the former income beneficiary but no affirmative duties are prescribed with regard to the remainder interest. In such cases the shift in the character of the trust causes it to become executed by the statute at the time of the death of the husband." [p. 385.]

In The American Law Institute, Restatement of the Law of Trusts, ch. 2, §57, the rule is stated as follows:

(2) "Where the settlor transfers property in trust and reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as it is intended to take effect after his death is testamentary and is invalid unless the requirements of the statutes relating to the validity of wills are complied with." (See also 54 Am. Jur., Trusts § 85.)

K. S. A. 58-2413 provides:

"A conveyance or devise of lands to a trustee whose title is nominal only, and who has no power of disposition or management of such lands, is void as to the trustee, and shall be deemed a direct conveyance or devise to the beneficiary."

This statute, although not controlling under the facts of the present case does indicate acceptance by this state of the common law rule as it applies to passive trusts. In case of a trust which becomes passive legal and equitable title passes to the beneficiary. The subject is relevant only to indicate the intention of the trustor.

For these reasons it appears the trustor did not intend the right to be exercised in his will. A power to sell or convey property can be exercised only in the manner and subject to the express conditions specified in the instrument conferring the power. (See K. S. A. 58-2405.)

In *Metropolitan Life Insurance Co. v. Hall*, 191 Ga. 294, 12 S. E. 2d 53, the court construed a trust deed which authorized trustees to convey the land to such persons as the beneficiaries severally might direct. That court stated: [p. 306]

".  .  .  A power of appointment (power of trustee to transfer title) can be exercised only in the manner specified by the donor. [Citations omitted.] The deed of trust did not authorize Mrs. Chivers to dispose of this property directly either by will or by any 'instrument in the nature of' a will,—whatever the latter phrase may mean. It merely provided that she could give direction to the trustees by either method, and that they should then convey the land as thus directed. Neither of these things was done."

The court then held the deed from the beneficiary did not convey title to the trust property. (See also *Cameron v. Hicks*, 141 N. C. 21, 53 S. E. 728.)

An even more compelling reason appears why this power of designation could not be exercised in the trustor's will. A power of designation is such a special and personal right it terminates generally on the donee's death. If not exercised during the lifetime of the holder it terminates unless the instrument creating the power of designation specifically provides for its exercise by the will of the holder. This rule was declared in *Whisman v. McMullan's Executor*, 312 Ky. 402, 227 S. W. 2d 926, where that court said:

"At common law the rule was that where a power of sale is to be executed with the consent of third persons, it is nullified or extinguished if any person whose consent is required dies prior to its exercise. See Tiffany, Real Property, (3rd Ed.) Volume 3, Section 707; Barber v. Cary, 11 N. Y. 397; and note in 120 A. L. R. 1407. It is true that the language of the will may require a different interpretation. See Wisker v. Rische, 167 Mo. 522, 67 S. W. 218." [p. 404.]

(See also C. J. S., Powers §41; 21 R. C. L., Powers §11, p. 783.)

Joe H. Sutcliffe reserved a right of designation which was not exercised before his death. The instrument creating the power of designation did not provide for its exercise by the will of the trustor. The trustor intended to exercise such right or power during his lifetime. The trustees held a power to convey limited by the power of designation retained by the trustor. On the death of Joe H. Sutcliffe the right of designation ceased and with its termination

the power to convey could not be exercised. The trust then resulted to Joe H. Sutcliffe, who was both trustor and beneficiary. Legal and equitable title to all of the property held in trust passed to the heirs, devisees and legatees of Joe H. Sutcliffe, deceased. The determination of those parties and interests is within the exclusive jurisdiction of the probate court of Neosho county, Kansas.

Under the provisions of K. S. A. 59-301 and the cases construing this statute the probate court holds exclusive jurisdiction of all matters incident and ancillary to the settlement and distribution of the decedent's estate. (*Foss v. Wiles*, 155 Kan. 262, 124 P. 2d 438; *Wright v. Rogers*, 167 Kan. 297, 205 P. 2d 1010; *In re Estate of Weaver*, 175 Kan. 284, 262 P. 2d 818; *Shields v. Fink, Executrix*, 190 Kan. 17, 372 P. 2d 252.)

A postnuptial agreement may cut off or enlarge the rights of those entitled to participate in an estate as heirs or devisees. The determination of such rights, however, remains a matter for probate jurisdiction. (*In re Estate of Welch*, 167 Kan. 97, 204 P. 2d 714; *McCormick v. Maddy*, 186 Kan. 154, 348 P. 2d 1007; *In re Estate of Sterba*, 193 Kan. 56, 392 P. 2d 136.)

The trustees and their attorneys have rendered valuable services in protecting the property which is now determined to belong in the estate of Joe H. Sutcliffe. Claim for allowance of fees and expenses is a matter within the jurisdiction of the probate court. The non-claim statute is a statute of limitation (*In re Estate of Wood*, 198 Kan. 313, 424 P. 2d 528) and may be tolled when a party is effectively precluded from pursuing a remedy until the outcome of pending proceedings. (See *Price, Administrator, v. Holmes*, 198 Kan. 100, 422 P. 2d 976.)

The remaining errors specified need no further discussion.

Judgment is reversed.